Deborah Sherwood v. Peter Vollers May it please the Court, I am Deborah Sherwood. Appellant and pro se in the matter of Sherwood v. Vollers. Before you, we have several legal issues, starting with my brief being unreviewable, I'm not sure what you have been able to review other than my reply brief. It was asked to be corrected and it was returned, whereas the appellee's brief had some corrections that he was able to make, whereas my improper brief was not cited for corrections, but cited to be returned. And I feel that was very discriminatory. Can you tell me how your arguments would differ? I'm sorry? How your arguments would differ? How they would differ between, oh, between my reply brief? How, if you were given the opportunity to amend your principal brief. I didn't, what the appellee calls my opening brief was completely misunderstood. I erred, I sent in something that was not a brief. It was not considered a brief by me and it was more of a letter, a question. Under the FRAP 28, like I said, it was, it shouldn't have been, I made as many offerings to correct it. The court left it till I had already filed what I considered a proper brief and denied it the next day. All of the motions for the appellee were ruled on immediately, leaving me in a biased and difficult situation with an already complicated case. As you probably know in Maynard, Blair v. Maynard decision, that the justice is served by reasonably accommodating all parties, whether represented by counsel or not. This matter is involved with a closing on a real estate property that I owned. And as a result of the improper behavior on the side of, on behalf of the appellee, I lost, it's hard for me to go on, I lost a lot of my artwork. It was my legacy artwork. Sculptures, large sculptures that weighed 200 pounds were destroyed the next day. This could have been avoided had the attorney who was supposed to represent me zealously instead chose to represent the opposing side, the buyer of this property and his demands. He asked me to sign the addendum, which I could not read. It was on a phone. It was an addendum that was tiny, and he only relayed one of the items, and that was the escrow was increased to 200. I mean, to 20,000. He did not go on to say that I would be forfeiting all of my possessions. I thought I would forfeit. The situation started because my moving down had complications. There was weather and mechanical delay. And so I was one day late in what I considered a two-day move. And instead of my attorney saying, you know, could we have a one-day extension, I feel that he fraudulently got me to agree to just an increase in escrow rather than have me perhaps pull out of the agreement, which is what I would have done. My evidence to this is that I have a five-minute – the event is documented by a call that was made to me. It's documented on the DocuSign format, which is used by real estate companies, so that when they have to sign forms, it's done electronically. It's done with a lot of precise data, including the IPs and, you know, the start of the conversation when it was signed. The whole call was five minutes, and that evidence was never admitted to the court, which was the small claims court, the only court that heard the whole case, which was an improper forum for a matter. Small claims court was in violation of the Vermont court rules for, I think it's 12B, which is to hear only items that are in the complaint. In the hearing, it was remanded twice because there were a couple issues that were repealed. On the final hearings, the judge was quite aware of the claims preclusion issue, and it's my opinion that she controlled the questioning to bring out all of the federal case issues which have never been heard, and it was an improper forum for that kind of a hearing. It was a malpractice hearing, which had a claim of $1 million versus the small claims, which was $4,500. You can stop me any time. Ms. Sherwood, we will hear from you. You did reserve a few moments later, so this is a good stopping point for you to hear from your colleagues. Good morning, Your Honors. May it please the Court, Michelle Seery on behalf of the appellee. I had a terrible time hearing you. I apologize. Is this better? Yes, please. Oh, good. Thank you. Now I can hear it. Good morning, Michelle Seery on behalf of the defendant, Peter Vollers. Your Honors, there was no error in the district court's decision that the doctrine of claim preclusion bars the plaintiff's claims raised in the district court complaint. The sole issue fairly raised by the plaintiff's opening brief is whether her claim in the district court is the same claim as the complaint that was litigated to final judgment in the Vermont State Court. Understanding that this is a self-represented plaintiff, there is clear authority in the Second Circuit that even under a liberal construction of her brief, the court limits its review of issues to those that are clearly raised in the appellant's opening brief. If I can address just briefly the argument made this morning that this court should review the second brief, the brief that she attempted to file and that this court disallowed. Well, before you move on to that, let me ask you, in the small claims court, she did state that she was only raising the question about the escrow account. So she's a pro se litigant, and she's saying, I'm only raising the escrow claim. But you're saying that she's precluded why? Because it wasn't a question of whether the small claims court questioned her about something beyond the escrow. It was a question of whether the law of claim preclusion allows a plaintiff to split the claim in the first place. And we submit that the law of claim preclusion does not do that. So she's got a claim for, what was it, a couple of thousand dollars in the court, and she's saying, I only want this to be about the escrow account, which had, what, $20,000 in it? That is correct. And she had a million-dollar claim in Federal court, and you're saying that the fact that the State court ruled puts an end to the Federal claim as opposed to anybody telling her, well, bring everything in Federal court then, because we're not going to be able to hear your million-dollar claim. There are a couple of responses to that. First, when you say nobody told her that she needed to bring it all in Federal court, the Vermont. She needed to bring it all in one court where you could hear all of it. You're not disputing that the Vermont claims court couldn't give her a million dollars. That is correct. Right. That is correct. So what should happen here? Your Honor, the district court was correct. If I can go back a little bit to the Vermont small claims procedures and the Vermont small claims statute, which is in Title XII, the relevant statute says, after establishing the jurisdictional amount for a small claims complaint, the statute says a plaintiff may not split a claim valued at a greater amount into two or more claims under the statute. And so I think that was a clear indication to any plaintiff contemplating splitting a claim that it is impermissible to split that claim for the purpose of getting just a portion of it into the small claims court. The clear indication is if you believe that your claim is valued at something higher than the jurisdictional amount, you need to go to a different court. She didn't do that. She chose to split the claim in order to get herself into the small claims proceeding, knowing that, quite well aware that at the time she filed that claim, that all of the conduct, all of the losses that she claims, the loss of the property that she claims to have happened, had occurred well prior to the date that she filed that claim in small claims court. Can I ask you a question in terms of the chronology? So the first, there's a claim filed in small claims court. Then that's appealed to the superior court of Vermont, which then takes it back to the claims court, right? There's an appeal so that additional evidence can be presented, and then there's a final judgment of the small claims court, and then that gets appealed two weeks before the district court case is filed? Is that? That gets decided two weeks before the district court federal complaint is filed. Is that right? That is correct, Your Honor. The small claims court went to judgment for the first time, I believe, in December of 2021, and the plaintiff appealed that to the superior court in Vermont, which remanded it on the grounds that the small claims court was indeed a proper form for a claim of legal malpractice and breach of contract. And so the case went to trial. It was actually scheduled for a second trial to take place in November of 2022, which my client had to prepare for all over again, and he attended remotely. The plaintiff did not attend that second hearing, whereupon the trial judge ruled again that she had failed to meet her burden of proof. At that point, at that point — And when you say trial judge, you mean the small claims judge? The small claims judge. That is correct. At that point, the plaintiff requested the small claims court to reopen that judgment on the grounds that she said that she had difficulty — she didn't attend remotely because she had trouble accessing the remote platform. The request to reopen was unbeknownst to my client, and the small claims court did, in fact, reopen that, unbeknownst to my client at the time that we filed our motion in the district court case to dismiss the complaint under 12b-6, 12b-2, and 12b-5 for insufficiency of service of process and lack of personal jurisdiction, as well as unraced judicata. After the small claims court reopened the case again, it went to trial on the merits in May and in July of 2023. And at that point, the small — And your client participated in that? Yes, he did. That was the third time. It was the third time he had to prepare himself and witnesses to attend that trial. And fast-forward to what happened then. I'm sorry? What happened as a result of that third trial? As a result of that third trial, the judgment was issued again in the defendant's favor, failure to meet the plaintiff's burden of proof. And the transcript of the two-day trial is in the record in — I'm just trying to get a sense of chronology. Sure. Not to that level of detail. Then that gets appealed to the Superior Court of Vermont, and it's affirmed by the Superior Court, correct? That is correct. And then this appeal of the district court's dismissal came subsequent to that. When did the district court dismiss the case in relation — I thought it dismissed it right after the Vermont court affirmed. But am I wrong on that? We are talking within days, Your Honor, and I have to refer to — That's fine. We can figure it out from the record. That's fine. Thanks. The district court, if I can — I'm not sure this will answer Your Honor's question, but the district court, when it granted the motion to dismiss, did so in reliance on the finality of the small claims court's judgment. Okay. Dependent on whether — that judgment was final. If it ultimately turned out to be overturned on appeal to the Superior Court in Vermont, then we might have a different outcome. But the small claims judgment was a final judgment for the purposes of claim preclusion. Okay. And I just — in your last seconds on the dais, will you comment on the fact that she is arguing that her small claims court claims were based on the October addendum, but her federal court claims are concerned via December addendum? Why should we not accept that? Because it's — for a couple of reasons. First, it's just simply not true that December addendum, which she signed on the day of the closing, was the addendum that created the escrow account. It was the addendum that put that $20,000 into the hands of an escrow agent to pay for a variety of things, including the disposal of property that the plaintiff left behind after the end of the day at closing. So that — without that December addendum, there would not have been an escrow account as the foundation of the small claims. And the other aspect of the argument that the small claims case did not involve the addendum is that that addendum was part and parcel integral to the series of — to the real estate transaction and to the series of transactions that underlay the small claims case. Okay. I think I understand. Thank you so much. Thank you, Your Honor. Ms. Sherwood, you have two minutes. Well, as has been true in this case, those slight distortions matter a lot. And I've been rather demonized throughout this whole process. There's a lot at stake, and there's a lot that is hurting me. But the escrow account — the claim that I submitted to the small claims court was just something to be able to try to get some satisfaction. I never thought in a million years that I would be filing a second complaint. I researched some Vermont attorneys. I couldn't afford to file them. And when I saw the diversity of citizenship, I just thought I would try. It was horrendously bad. You know, everything was a mess. But the bottom line is that if you read the judgment of the final small claims court, she's making rulings that have to do with things that you would decide in a malpractice suit. One of the Superior Court judges said, yes, the small claims can litigate malpractice issues, but we know that that is limited to $5,000. Who will take a malpractice suit for $5,000? And under Rule 12b-6 in Vermont, the inquiry is limited to the plaintiff's complaint, the documents attached to incorporated herein as Technomarine S.A. v. Gift Ports. They call a manual the complaint, and I think the judge was very unfair, finding all of the defendants' lies to be true. Thank you so much. We will take this case on your advisement.